[Civil No. 2900. Filed December 15, 1930.]

[294 Pac. 273.]

J. R. TREAT, Appellant, v. LEON M. NOWELL, ED. LACEY and MARY LACEY, His Wife, Appellees.

Mr. H. G. Richardson and Mr. Francis M. Hartman, for Appellant.

Messrs. Richey & Richey, for Appellees.

LOCKWOOD, C. J.—Leon M. Nowell, Ed. Lacey and Mary Lacey, his wife, hereinafter called plaintiffs, recovered judgment in the superior court of Pima county against J. R. Treat, hereinafter called defendant, in the sum of $2,189.26, as damages for certain alleged false and fraudulent representations made by defendant to plaintiffs, and from said judgment and the order overruling the motion for a new trial defendant has appealed. There are some twenty-two assignments of error, many of which contain subdivisions, but we shall consider only the legal questions raised thereby which are necessary for a proper disposition of the case.

In 1925 Fred E. Carpenter and Ella Carpenter, his wife, were the owners of 160 acres of land in

Pinal county, upon which was situated a well. In May of that year they purchased from the New State Electric Company, under a conditional sales contract, certain electrical machinery, and from Lane & Bowler, under another conditional sales contract, a pump, all of which machinery was put in place upon the land in the usual manner for pumping irrigation water from the well; that is, a proper concrete base was placed by the well, the machinery for operating the pump was bolted to the base, and the pump placed in proper position at the bottom of the well. The New State Electric Company's contract, which was in the form of a letter addressed to Carpenter at Florence, Arizona, described the electrical machinery in detail, and stated that it should be installed "ready to operate at your ranch," but did not further describe the property on which it was to be installed. The Lane & Bowler contract described the machinery sold by them as "to be installed in the southeast corner of N. E. ¼ sec. 35, T P 5 S, R 8 E Pinal County, Arizona." Both contracts were signed by the parties thereto, and were recorded in Book 1, Conditional Sales Records of Pinal County, Arizona, that being the county where the land in question was located.

In January, 1926, the Carpenters obtained a loan of $10,000, secured by a first mortgage on the land and improvements, from the Pacific Coast Joint Stock Land Bank. The New State Electric Company was paid all but $900 of its claim, and Lane & Bowler all but $435 of their claim, out of the proceeds of the loan, taking new notes and crop mortgages for the balance still due. Early in 1927, nothing having been paid on these notes, new ones were given and secured by other crop mortgages. In the spring of 1927 the Carpenters, not being able to pay certain indebtednesses, went to defendant Treat and obtained from him a loan of $3,000, secured by a second mort-

gage on 'the land, which money was used by them to pay off debts which had become a lien on the land. They then conveyed it to one Christy, but remained in possession thereof with the right to sell the property for $20,000, of which Christy was to get $1,300. They also gave defendant Treat a sales agreement subject to the usual agent's commission, and in 1928 he sold the property to plaintiffs Nowell and Lacey for a cash consideration of $3,000 and their equity in certain lands in Pima county. Christy, being the holder of the legal title, deeded the property to plaintiffs herein, the north half to the Laceys and the south half to Nowell, each deed conveying an undivided half interest in the pumping plant referred to and reciting that it was subject to a first mortgage of $10,000 and a second mortgage of $3,000. An abstract of title was furnished the purchasers, which showed the record title to be in Christy, free of all encumbrances except for the two mortgages referred to and some taxes, but did not show the conditional sales contracts above mentioned.

A few months later the New State Electric Company brought suit in Maricopa county against the Carpenters, Christy, Lacey, Nowell and Treat to recover possession of 'the property covered by its conditional sales contract, alleging that it was the owner of the electrical equipment on the land, that there was a balance due on the contract of some thousand dollars, and that the defendants in such suit claimed an interest in the property. A similar suit covering the pump was brought by the Lane & Bowler Company. All the defendants were duly served with process, but only Nowell and Lacey answered and made defense. A judgment was duly entered in each case against the defendants to the effect that the plaintiffs were the owners of the property described in the complaint, and after judgment, in order to protect their interests, Nowell and Lacey

paid to the plaintiffs in those cases $1,679.26, and also paid in defending the actions attorneys' fees amounting to $500. Thereafter Nowell and the Laceys brought suits in Pinal county against Christy for breach of the warranties contained in their deeds, which actions were still pending at the time of the determination of this suit.

These facts are undisputed. The court based its judgment upon the theory, which was supported by its findings of fact, that Treat represented to plaintiffs herein that at the time of their purchase of the property in question the pumping plant was fully paid for and that there were no liens thereon other than the two mortgages described in the deeds, when in truth and in fact the pumping plant was subject to certain liens held by the New State Electric Company and Lane & Bowler, which eventually amounted to nearly $1,700; that he made such representations in utter and reckless disregard of their truth or falsity; and that plaintiffs relied on said statements by Treat to their damage in the amount for which judgment was rendered.

The first question which we need consider is whether the action was one concerning real estate, so that the Pima county superior court had no jurisdiction thereof. From the entire record we are satisfied the action was one for damages founded upon fraudulent representations and the venue was properly laid.

The second question of importance is whether or not as a matter of fact the alleged representations that the pumping plant was free of any liens were true or false. This depends primarily upon the construction to be given to section 7, chapter 40, Session Laws of 1919. This section reads as follows:

"Section 7. (Fixtures.) If the goods are so affixed to realty, at the time of a conditional sale or subsequently as to become a part thereof and not to be severable wholly or in any portion without material

injury to the freehold, the reservation of property as to any portion not so severable shall be void after the goods are so affixed, as against any person who has not expressly assented to the reservation. If the goods are so affixed to realty at the time of a conditional sale or subsequently as to become part thereof but to be severable without material injury to the freehold, the reservation of property shall be void after the goods are so affixed as against subsequent purchasers of the realty for value and without notice of the conditional seller's title, unless the conditional sale contract, or a copy thereof, together with a statement signed by the seller briefly describing the realty and stating that the goods are or are to be affixed thereto, shall be filed before such purchase in the office where a deed of the realty would be recorded or registered to effect such realty. As against the owner of realty the reservation of the property in goods by a conditional seller shall be void when such goods are to be so affixed to the realty as to become part thereof but to be severable without material injury to the freehold, unless the conditional sale contract, or a copy thereof, together with a statement signed by the seller briefly describing the realty and stating that the goods are to be affixed thereto, shall be filed before they are affixed, in the office where a deed would be recorded or registered to effect such realty.''

From the undisputed testimony in the record the goods in question were to be affixed and were affixed to the realty. If, after they were affixed, they could not be severed without material injury to the freehold, the reservation of title was void, and plaintiffs herein took the property free of lien. In such case, of course, they could suffer no injury by reason of the fraudulent representations, and their suit against defendant must necessarily fail. If they were so affixed that they became a part thereof, but were severable therefrom without material injury to the freehold, the question of the lien would be determined by whether or not the conditional sales contract prop-

erly described the realty to which the goods were to be affixed, and whether it was filed in compliance with the statute.

We are of the opinion that goods of this character come under the category last stated, that is, of property affixed to 'the freehold, but which can be severed therefrom without material injury thereto. While the conditional sales contract with the New State Electric Company fails to describe the land to which the property sold by it was affixed with exactness, we are of the opinion 'the description is sufficient to put an intending purchaser of the land on inquiry so that he would be bound by it, if it were recorded in accordance with the statute. 39 Cyc. 1736. The Lane & Bowler contract specifically describes the land on which 'the property covered by it was to be installed. If, therefore, the recording statutes were complied with, both contracts would be valid liens.

The statute requires that the contract be "filed . . . in the *office* where a deed of the realty would be recorded." It is obvious from the record that this was done. A deed, to affect the realty in question, must have been filed in the office of the county recorder of Pinal County, and this was the office where the conditional sales contracts were filed. The vendors could do no more. It was not within their power 'to dictate to the recorder in what book an instrument should be recorded or how it should be indexed. When they had filed it in the proper office, their duty was done.

But it may be said, notwithstanding this fact, if the recorder fails to record the instrument in the proper book and index it properly thereafter, an innocent purchaser is not bound by constructive notice thereof, and the remedy of the vendor, if any, is against the recorder on his official bond. We must then consider the statute to determine in what books an instrument of this nature should properly be recorded and indexed.

The duties of the recorder in this respect are set forth in sections 849, 850, 854 and 859, Revised Code 1928. The sections are lengthy and we need not quote them in full. It is apparent, however, on examining them, that an instrument which can in no manner affect the title of real property or impose a lien thereon, but which on the contrary is intended to preserve a lien on personal property alone, and prevent it from becoming an integral part of realty, should not be recorded or indexed in any of the various records and indices affecting real estate, but rather in some other book. There is no book or index specifically provided for, in which such an instrument would properly be recorded, but under the general provisions of the statute (sections 849, 850) allowing books for "such other writings as are by law required or permitted to be recorded" and "such other indices as may be necessary," we are of the opinion that a book entitled "Conditional Sales" was a proper one in which to record the instruments in question, and that such recording was constructive notice to purchasers of the property affected. *Stephen* v. *Patterson,* 21 Ariz. 308, 188 Pac. 131.

It may be contended that such a record would be misleading to prospective purchasers of real estate. We think, however, 'this position is not well taken. Under the Conditional Sales Act, if the personal property sold is so affixed to the real estate as to become part thereof and incapable of being severed therefrom without material injury to the freehold, the purchaser of the realty is fully protected, for in such case no lien can be reserved. On the other hand, if it is of a severable nature, so that a personal property lien can be preserved against it, he is presumed to know that the books covering liens on personal property, whether by mortgage or reser-

vation of title under a conditional sales contract, are proper places to look for liens of that nature.

It is urged by defendant that the decisions in the suits in Maricopa county were not *res adjudicata* as against him as to the nature of the property in question, and the liens thereon. In view of the fact that we have held that on the undisputed facts in this case the conditional sales contracts involved herein were liens on the personal property described in such contracts, the point is immaterial.

Objection is made to the finding by the court that certain attorneys' fees paid by Nowell and Lacey in the Maricopa county actions were an element of damages. We are of the opinion that attorneys' fees paid in these actions are in the same category as the payment of the judgments themselves. *Levitzky* v. *Canning,* 33 Cal. 299; 17 C. J. 809.

The evidence in the case is, of course, conflicting. We have examined it carefully and are satisfied therefrom that there is sufficient to sustain the trial court in its holding that defendant Treat made false representations in regard to the liens which were relied upon by plaintiffs, and that they were made in utter and reckless disregard of whether the same were true or false.

The assignments of error not disposed of by the principles laid down above need not be discussed, as in our opinion they are not material to a proper disposition of the case. The judgment is affirmed.

McALISTER and ROSS, JJ., concur.