815 P.2d 411

**Michael COLLINS, an unmarried man, Plaintiff–Appellee,**

**Chrysler First Credit Corporation, a Delaware corporation, Defendant, Cross Defendant–Appellee,**

v.

**FIRST FINANCIAL SERVICES, INC., an Arizona corporation, Defendant, Cross Claimant–Appellant.**

**No. 1 CA–CV 89–507.**

Court of Appeals of Arizona, Division 1, Department A.

July 25, 1991.

producing relation back evidence now lies with the defendant. A.R.S. § 28–692(B).

Stanley M. Hammerman, P.C. by Stanley M. Hammerman, Jon R. Hultgren, Phoenix, for defendant, cross defendant-appellee.

·Robbins & Green, P.A. by Janet B. Hutchison, Sally C. Shanley, Phoenix, for defendant, cross claimant-appellant.

## OPINION

CONTRERAS, Judge.

Appellant, First Financial Services, Inc. ("First Financial"), appeals from the trial court's ruling that it is not entitled to recover as part of its conversion damages against appellee, Chrysler First Credit Corporation ("Chrysler"), attorneys' fees incurred in a quiet title action brought against First Financial by a third party, Michael Collins ("Collins"). The issue on appeal is whether First Financial, which obtained a judgment against Chrysler for conversion, is entitled to recover these attorneys' fees as an element of its conversion damages. We conclude that because First Financial's defense against the third party's quiet title action was necessitated by Chrysler's conversion, First Financial is entitled to recover its reasonable attorneys' fees under the "tort of another" exception to the general rule against awarding attorneys' fees in the absence of a statute or agreement of the parties providing for such an award. We therefore reverse and remand for further proceedings to determine the amount First Financial is entitled to recover.

## FACTS AND PROCEDURAL BACKGROUND

This case arises from a quiet title action filed on February 23, 1987, by Collins against First Financial seeking to clear title to a mobile home that Collins claimed to have previously purchased, together with real property, at a trustee's sale held by T.D. Service Company of Arizona ("T.D."). The trustee's sale was held by T.D. on behalf of Chrysler, which was the beneficiary under a deed of trust encumbering the mobile home and certain real property. First Financial claims to have held a lien on the mobile home senior to the lien of Chrysler's deed of trust, which Collins acquired. Although First Financial committed various errors in properly recording its lien,[1] there was evidence that Chrysler was aware of First Financial's senior lien on the mobile home and acknowledged that First Financial had a superior interest regarding the mobile home.

After the trustee's sale, disagreements arose between T.D., Collins, First Financial and Chrysler as to whether the mobile home had been included in the sale. The initial trustee's deed granting the property to Collins did not contain a legal description of the mobile home. T.D. and Chrysler both initially denied that the mobile home had been included in the sale. However, upon the request of Collins' attorney, T.D. later recorded another trustee's deed that did contain a description of the mobile home. Collins then instituted the quiet title action against First Financial. First Financial added Chrysler as an additional defendant and cross-claimed against Chrysler for conversion damages. Subsequently, the trial court granted Collins' motion for partial summary judgment against First Financial on the issue of title to the mobile home. The trial court also granted First Financial's motion for summary judgment against Chrysler on the issue of liability for conversion. The court reserved the issue of the amount of conversion damages. In granting both of the motions, the trial court ruled that Collins was a bona fide purchaser of the mobile home and held a

---

1. First Financial's UCC–1 Financing Statement was recorded in Maricopa County, as opposed to Yavapai County, where the mobile home was located, and referred in its property description section only to fixtures, furniture, appliances and accessories attached to the mobile home, rather than the mobile home itself. Additionally, the Affidavit of Affixture recorded by First Financial in Yavapai County was recorded over two months after the recordation of Chrysler's deed of trust.

clear title to it. The court later awarded Collins $10,000.00 in attorneys' fees against First Financial.

First Financial and Chrysler stipulated that the value of First Financial's converted interest in the mobile home was $20,169.61. The parties also agreed to submit briefs to the court on the issue of whether First Financial was entitled to recover from Chrysler as part of its conversion damages the attorneys' fees assessed against it in connection with Collins' quiet title action, as well as its own attorneys' fees expended in that action. After First Financial and Chrysler submitted their briefs on this issue, the trial court ruled that First Financial was not entitled to such fees as part of its conversion damages.

## CONVERSION DAMAGES

■ The Arizona courts have stated that the measure of conversion damages includes not only the value of the property taken, but also other damage suffered because of the wrongful detention or deprivation of the property, such as damages for loss of use. *See Phelps v. Melton,* 14 Ariz.App. 296, 297, 482 P.2d 905, 906 (1971). This statement of the law is consistent with the *Restatement (Second) of Torts,* which states that damages for conversion include "the amount of any further pecuniary loss of which the deprivation has been a legal cause[.]" *Restatement (Second) of Torts* § 927(2)(b) (1979). First Financial acknowledges that the attorneys' fees it incurred in its conversion action against Chrysler are not recoverable.[2] However, First Financial argues that Chrysler's conversion of its interest in the mobile home (i.e. the sale to Collins) caused First Financial to have to defend itself in the quiet title action and, therefore, the expenses that First Financial incurred in connection with the quiet title action are part of its conversion damages. Chrysler points out, however, that this contention is in apparent conflict with the "American Rule" that litigants are generally not entitled to recover their attorneys' fees in ei-

ther the same or a subsequent suit unless provided by statute or by agreement of the parties. *See United States Fidelity & Guaranty Co. v. Frohmiller,* 71 Ariz. 377, 379, 227 P.2d 1007, 1008 (1951). However, the Arizona courts have recognized certain exceptions to this general rule.

The Arizona Supreme Court has described one of the exceptions to the general rule prohibiting awards of attorneys' fees as follows:

> It is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expenses to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages.

*United States Fidelity & Guaranty Co. v. Frohmiller,* 71 Ariz. 377, 380, 227 P.2d 1007, 1009 (1951) (quoting 15 Am.Jur. *Damages* § 144) (1938)).

This exception is also embodied in the *Restatement (Second) of Torts* § 914(2) (1979), which states:

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

■ The foregoing exception, known as the "tort of another" exception, has been widely recognized in other jurisdictions. *See* Annot., 45 A.L.R.2d 1183 (1956); 22 Am.Jur.2d *Damages* § 618 (1988). As generally applied, in order to recover attorneys' fees under this exception, the plaintiff must show that: (1) he became involved in a legal dispute because of the defendant's tortious conduct; (2) the dispute was with a third party; (3) the plaintiff incurred attorneys' fees in connection with that suit; (4) the expenditure of attorneys' fees was a

**2.** The Arizona Supreme Court ruled in *Jones v. Stanley,* 27 Ariz. 381, 233 P. 598 (1925) that

attorneys' fees and costs are not recoverable in a conversion action.

foreseeable or necessary result of the tortious conduct; and (5) the claimed fees are reasonable. 22 Am.Jur.2d *Damages* § 621 (1988).

First Financial claims that all of the above elements [3] have been satisfied here because Chrysler's conversion of the mobile home by its sale to Collins caused First Financial to have to defend itself against Collins' quiet title action in order to protect its interest in the mobile home, and First Financial incurred attorneys' fees in that action [4] in addition to the attorneys' fees that were awarded to Collins.

Chrysler asserts that First Financial should not be able to recover the attorneys' fees under the "tort of another" exception because First Financial's involvement in the quiet title action was the result of its own "unfounded assertion of ownership or lienhold status superior to [Collins'] interest" and because Collins' success in that action was due to First Financial's own failure to properly record its lien so that record notice would be provided to any purchaser and First Financial's failure to attend the trustee's sale, despite receiving notice of that sale. In support of its position, Chrysler relies on *Brochner v. Western Insurance Company,* 724 P.2d 1293 (Colo.1986), in which the Colorado Supreme Court stated that the "tort of another" exception to the general rule prohibiting attorneys' fees awards applied "only if the party seeking such attorney fees was without fault as to the underlying action." 724 P.2d at 1300. Chrysler also relies on *State Department of Environmental Protection v. Ventron Corporation,* 94 N.J. 473, 468 A.2d 150 (1983) and *Conrad v. Suhr,* 274 N.W.2d 571 (N.D.1979) to support this proposition.

*Brochner* and *Conrad* are not analogous to the present case because both of those cases involved claims for indemnity and contribution among joint tortfeasors. In both of those cases, there was a prior lawsuit in which a plaintiff sued multiple defendants on various claims, but the defendants seeking attorneys' fees had not been found liable. The exonerated defendants then sought indemnity against the "guilty" defendants for attorneys' fees and costs incurred in connection with the lawsuits. Both courts declined to allow these co-defendants to recover attorneys' fees from the others because, in the prior lawsuits, both were defending at least partially against allegations of their own independent acts.

In *Ventron,* also relied upon by Chrysler, the State of New Jersey Department of Environmental Protection sued various parties for the cost of cleanup and removal of mercury pollutants from certain real property. Two of the defendants were Ventron, which allegedly caused the contamination, and the Wolfs, who had purchased a portion of the property from Ventron and had possibly contributed to the contamination by using mercury-contaminated water in their demolition of a mercury processing plant located on the property. Under the New Jersey statutes, liability for cleanup costs could be imposed based merely on ownership of the contaminated property. The Wolfs cross-claimed against Ventron for fraudulent nondisclosure of mercury pollution in the sale of the property. The trial resulted in a ruling that the Wolfs were not liable for the costs of cleanup and that Ventron was liable to the Wolfs for fraudulent nondisclosure. Although the issue of damages on the fraudulent nondisclosure claim was set aside for a separate trial, the lower court did hold that Ventron

---

**3.** Although Chrysler failed to raise this issue, we note that the fact that the quiet title action was technically part of the same action as the conversion claim should have no significance with respect to the applicability of this exception. Addressing this issue, the California Supreme Court stated: "[T]here is no reason why recovery of such fees should be denied simply because the two causes (the one against the third person and the one against the party whose breach of duty made it necessary for the plain-

tiff to sue the third person) are tried in the same court at the same time." *Prentice v. North American Title Guaranty Corporation,* 59 Cal.2d 618, 621, 381 P.2d 645, 647, 30 Cal.Rptr. 821, 823 (1963).

**4.** The reasonableness of First Financial's attorneys' fees will need to be considered by the trial court upon remand.

would be required to reimburse the Wolfs for their attorneys' fees incurred in the defense of the DEP suit, relying on the theory that the contamination constituted a breach by Ventron of the covenant against encumbrances in its deed to the Wolfs.

The New Jersey Supreme Court held that the Wolfs could recover from Ventron that portion of their legal expenses that was incurred as a proximate result of Ventron's fraud pursuant to the "tort of another" theory. *Ventron*, 94 N.J. at 505, 468 A.2d at 167. However, because the lower court had not expressly found that Ventron's fraud was the proximate cause of the DEP action against the Wolfs, the court remanded, stating that it was an "open question whether it was Ventron's fraud or the Wolfs' own acts, or both, that caused the Wolfs to incur counsel fees in defense of the DEP action." *Id.* The court further stated that "[t]he Wolfs may not recover the part of their counsel fees attributable to defending their own acts. Nor may they recover the portion of the counsel fees incurred in prosecuting their own claim against Ventron." *Id.*

■ The ruling in *Ventron* supports the position that First Financial should be entitled to recover its attorneys' fees and expenses incurred in defending against Collins' quiet title action if such expenses were incurred as a proximate result of Chrysler's conversion of the mobile home. We conclude that they were. The trial court in this case ruled that First Financial was entitled to judgment as a matter of law against Chrysler when the court granted First Financial's motion for summary judgment against Chrysler based on First Financial's superior lien on the mobile home which Chrysler extinguished by selling to Collins, a bona fide purchaser. Such action on Chrysler's part constituted a conversion of the mobile home.

It was Chrysler's conversion of the mobile home that forced First Financial to assert its interest in the home and that resulted in the filing of a quiet title action by Collins against First Financial. First Financial's errors in properly recording its lien on the mobile home and its failure to attend the trustee's sale[5] were not the reasons for the filing of the quiet title action and were relevant only as to the issue of whether First Financial did have a superior lien to Chrysler, an issue the trial court decided in First Financial's favor and which has not been appealed. In addition, given the fact that Chrysler's argument before the trial court in defense of the conversion claim was that the mobile home was not included in the trustee's sale, First Financial could not have just given a quit claim deed to Collins and then sought conversion damages against Chrysler without risking the possibility that Chrysler would prevail in its argument. In that case, First Financial would have conveyed away its interest in the property and would not have been able to recover conversion damages from Chrysler.

■ The fact that First Financial did not prevail in the quiet title action does not affect its entitlement to the attorneys' fees. *See Elijah v. Fender*, 674 P.2d 946, 951 (Colo.1984). It was Chrysler's conversion of the mobile home that was the very cause of First Financial's defeat in the quiet title action.

■ Chrysler also argues that the "tort of another" exception should not apply in this case, because First Financial failed to prove that Chrysler acted in bad faith, vexatiously, wantonly or for oppressive reasons. In support of its argument that the application of the "tort of another" exception requires such a finding, Chrysler relies on two Arizona cases, *McKesson Chemical Co. v. Van Waters & Rogers*, 153 Ariz. 557, 739 P.2d 211 (App.1987) and *Taylor v. Southern Pacific Transportation Company*, 130 Ariz. 516, 637 P.2d 726 (1981). However, these decisions are distinguishable from the present case.

In *Taylor*, the plaintiff had prevailed against the Southern Pacific Transporta-

---

5. Regarding First Financial's attendance at the trustee's sale, there was some evidence that, prior to the sale, a First Financial official was told by employees of Chrysler that the mobile home was not to be included in the sale.

tion Company on a wrongful death claim. After the verdict was rendered, the trial court granted a new trial to the plaintiff on the grounds that the defendants' attorneys had engaged in misconduct and the verdict was insufficient and the result of passion and prejudice on the part of the jury. Southern Pacific appealed the order granting a new trial and the plaintiff cross-appealed from the trial court's failure to impose sanctions for misconduct on the part of Southern Pacific's counsel. The plaintiff conceded that there was no statutory authority that would allow the court to impose sanctions and grant attorneys' fees under the circumstances of that case. The court then noted that one exception to the general rule prohibiting awards of attorneys' fees was the "tort of another" exception as stated in *United States Fidelity & Guaranty Co. v. Frohmiller*, 71 Ariz. at 380, 227 P.2d at 1009 (quoting 15 Am.Jur. *Damages* § 144 (1938)). The court went on to say that the plaintiff could not recover against the defendants under that exception because "there must be more than a mere lack of good faith. The plaintiff must show that the defendants acted vexatiously, wantonly, or for oppressive reasons." *Taylor*, 130 Ariz. at 523, 637 P.2d at 733. Because the plaintiff had not met the burden of proving that the defendants' conduct was egregious enough, the supreme court held that the trial court's failure to award the attorneys' fees as sanctions was not an abuse of discretion. *Id.*

Although the *Taylor* court discussed the "tort of another" exception, the exception as contemplated by the *Restatement (Second) of Torts* § 914(2) (1979) and described in 22 Am.Jur.2d *Damages* § 618 (1988) does not apply to the facts of that case because it did not involve a plaintiff's attempt to recover attorneys' fees incurred in litigation with a *third party*. Rather, *Taylor* involved a plaintiff who was seeking attorneys' fees incurred in a single action as sanctions against a defendant. Therefore, it appears that the court's ruling was based on the application of a separate exception to the general rule prohibiting awards of attorneys' fees which has sometimes been applied. This separate exception provides that a court may award counsel fees to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.[6] The authority cited by the *Taylor* court for the requirement that the plaintiff must show that the defendant acted vexatiously, *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), dealt not with the "tort of another" exception, but with this separate "vexatious litigation" or "bad faith" exception, and noted that the underlying rationale of cases applying such exception is punitive.

In fact, an Arizona court has recognized that the "vexatious litigation" exception to the rule prohibiting awards of attorneys' fees is separate and distinct from the "tort of another" exception. In *Wichita v. Pima County*, 131 Ariz. 576, 643 P.2d 21 (App. 1982), Division Two of this court stated:

> The general rule is that each party to a lawsuit must pay his own way. Exceptions are few: (1) Where contracting parties provide otherwise; (2) where a statute allows the award; (3) where the losing party has been guilty of vexatious litigation *or* (4) where the defendant has generated litigation between the plaintiff and a third party.

*Id.* at 577, 643 P.2d at 22 (emphasis added).

The second case relied on by Chrysler for the proposition that the "tort of another" exception requires that the plaintiff prove the defendant acted vexatiously is *McKesson Chemical v. Van Waters & Rogers*,

---

**6.** This court recognized the "bad faith" exception to the general rule regarding the unavailability of attorneys' fees to the prevailing party absent statute or contract in *London v. Green Acres Trust*, 159 Ariz. 136, 765 P.2d 538 (App. 1988). The court in *London* cited *Taylor* as suggesting that the supreme court recognizes this "bad faith" exception. *London*, 159 Ariz. at 146, 765 P.2d at 548. The *London* court, however, seemed to confuse the "bad faith" exception, which requires vexatious conduct on the defendant's part, with the "tort of another" exception. *See id.* In any event, *London* was not a "tort of another" case and therefore any statements the court made (or may have made) regarding the "tort of another" exception were merely dicta.

153 Ariz. 557, 739 P.2d 211 (App.1987). However, *McKesson,* like *Taylor,* also involved the application of the separate "vexatious litigation" or "bad faith" exception. In *McKesson,* Van Waters intervened as a defendant in a lawsuit by OEM Repro Products, Inc. against McKesson for the sale of certain contaminated chemicals. Van Waters also filed a cross-claim against McKesson, seeking indemnity, attorneys' fees and costs. Van Waters intervened in the lawsuit after it had received a letter from McKesson stating that if Van Waters did not voluntarily enter into the lawsuit, McKesson might stipulate with OEM to facts designed to allow the jury to find that the defective chemicals came from barrels which Van Waters had sold to McKesson. At the close of OEM's case, the court found that there was no evidence that the contaminated chemicals came from Van Waters and so granted a directed verdict for Van Waters against OEM and a partial summary judgment for Van Waters against McKesson, reserving the issue of attorneys' fees.

After the conclusion of trial, the trial court denied Van Waters' request for attorneys' fees against McKesson. Van Waters appealed, claiming entitlement to the attorneys' fees incurred in the action under A.R.S. §§ 12–341.01(C), 12–341.01(A) and the "tort of another" exception as described in *United States Fidelity & Guaranty Co. v. Frohmiller,* 71 Ariz. 377, 227 P.2d 1007 (1951). This court held that Van Waters could only recover its fees under A.R.S. § 12–341.01(A). With respect to the "tort of another" exception, the court cited *Taylor v. Southern Pacific Transportation Company,* 130 Ariz. 516, 637 P.2d 726 (1981), stating: "For a defendant's conduct to fall within this exception, however, it must be shown that the defendant acted vexatiously, wantonly or for oppressive reasons." *McKesson,* 153 Ariz. at 561, 739 P.2d at 215. Again, the court felt that Van Waters had not met this burden.

Like *Taylor, McKesson* does not involve the typical fact scenario to which the "tort of another" exception applies, i.e., when, because of the tort of A, B is required to bring or defend against an action involving C in order to protect its interests. *See Restatement (Second) of Torts* § 914(2) comment b, illustrations 1–3 (1979). Although Van Waters technically intervened in the case as a defendant against OEM, the plaintiff, it appears that the court viewed Van Waters' involvement in the lawsuit as solely against McKesson. The court stated that, although the pleadings had been inartfully drafted in that Van Waters' cross-claim sought indemnity from McKesson in the event that Van Waters was found liable to OEM, what Van Waters was really seeking, and what the trial court granted, was a declaratory judgment that Van Waters owed no indemnity to McKesson, whether or not McKesson was liable to OEM. *McKesson,* 153 Ariz. at 562–563, 739 P.2d at 216–217. OEM, the plaintiff, never sought to bring Van Waters into the action and, in fact, opposed the motion to intervene. *Id.* at 564, 739 P.2d at 218. In addition, the fact that the court held that any fees awarded to Van Waters would have to be borne solely by McKesson, rather than apportioned between both OEM and McKesson, supports the position that the court viewed Van Waters' action as being solely against McKesson. The court noted that "[e]ven though the trial court stated that it was granting relief to Van Waters against both plaintiff and McKesson, Van Waters' only meaningful success was on its cross-claim against McKesson." *Id.* Therefore, although technically Van Waters had defended in the lawsuit against OEM, in reality the only party adverse to Van Waters was McKesson. As a result, Van Waters was attempting to collect from McKesson attorneys' fees incurred in litigation against McKesson rather than a third party, and the "tort of another" exception was inapplicable. In short, *Taylor,* like *McKesson,* involved an attempt to obtain an award of attorneys' fees as a sanction pursuant to the "vexatious litigation" or "bad faith" exception. Therefore, the court imposed the requirement that the defendant must have acted vexatiously, wantonly, or for oppressive reasons.

Although the "tort of another" exception has been recognized in various Arizona

cases, the present case marks the first time in this jurisdiction that a plaintiff has relied on the exception in attempting to recover attorneys' fees incurred in an action with a *third party* from a tortfeasor as conversion damages.[7] This, we believe, is the scenario contemplated by the *Restatement (Second) of Torts* § 914(2) (1979). We specifically note that § 914(2) does not require that the defendant acted vexatiously. In the absence of Arizona law to the contrary, this court will follow the law of the Restatement. *Jesik v. Maricopa County Community College District*, 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980). As mentioned earlier, no Arizona decision has expressly declined to adopt § 914(2) under the circumstances of the present case. In addition, those other jurisdictions that have adopted the "tort of another" exception have not imposed a requirement that the defendant acted vexatiously, wantonly or for oppressive reasons. *See, e.g., Tetherow v. Wolfe*, 223 Neb. 631, 392 N.W.2d 374 (1986); *Gray v. Don Miller & Associates, Inc.*, 35 Cal.3d 498, 674 P.2d 253, 198 Cal. Rptr. 551 (1984); *Elijah v. Fender*, 674 P.2d 946 (Colo.1984); *Nalivaika v. Murphy*, 120 Ill.App.3d 773, 76 Ill.Dec. 341, 458 N.E.2d 995 (1983). Therefore, we reject Chrysler's argument that First Financial must prove that Chrysler's conduct was vexatious, wanton or oppressive in order for the "tort of another" exception to apply and thereby permit First Financial to recover the attorneys' fees incurred in the quiet title action.

Accordingly, and by way of summarization, we hold that, because the defense of Collins' quiet title action was necessary to protect First Financial's interest in the mobile home and because the quiet title action and First Financial's defense in that action were the natural consequences of Chrys-

ler's conversion of the mobile home, First Financial, in accordance with the "tort of another" exception, is entitled to recover, as part of its conversion damages, its reasonable attorneys' fees incurred in its defense of the quiet title action, as well as the attorneys' fees and costs assessed against it in that action. We remand to the trial court for its determination the amount First Financial is entitled to recover as damages.

We deny Chrysler's request for attorneys' fees on appeal.

TAYLOR, P.J., and LANKFORD, J., concur.

---

7. In *Treat v. Nowell*, 37 Ariz. 290, 294 P. 273 (1930), the court permitted a purchaser of real property and improvements who had obtained a judgment against the seller for false representations that there were no liens on the property other than certain mortgages, to recover attorneys' fees paid in defending an action by the holders of the liens. The court did not elaborate on the basis for such award, merely stating that the attorneys' fees paid were in the same category as the payments of the judgments to

the lienholders. 37 Ariz. at 298, 294 P. at 276. In addition, in *Earven v. Smith*, 127 Ariz. 354, 621 P.2d 41 (App.1980), Division Two of this court held that "when a paid escrow holder has negligently made it necessary for a vendor to file an action against his vendee, attorney's fees incurred by the vendor in prosecuting his action are recoverable as an item of the vendor's damages in an action against the escrow holder." 127 Ariz. at 357, 621 P.2d at 44.