717 P.2d 937

## SANCHEZ–O'BRIEN MINERALS CORPORATION, Plaintiff-Appellee, Cross Appellant,

v.

## STATE of Arizona, Arizona State Land Department, the Honorable Joe T. Fallini, State Land Commissioner, Robert Lane, Deputy State Land Commissioner; and Blake-Berry-Blake Corporation, a Texas corporation, Defendants-Appellants, Cross Appellees.

### No. 1 CA–CIV 7442.

Court of Appeals of Arizona, Division 1, Department D.

March 27, 1986.

Evans, Kitchel & Jenckes, P.C. by Jerry L. Haggard, Amy R. Coy, James M. Belin, Phoenix, for plaintiff-appellee, cross appellant.

Robert K. Corbin, Atty. Gen. by Anthony B. Ching, Sol. Gen., Russell A. Kolsrud and Jon K. Wactor, Asst. Attys. Gen., Phoenix, for defendants-appellants, cross appellees, State of Ariz.

Fennemore, Craig, von Ammon, Udall & Powers by Calvin H. Udall, Nancy L. Rowen, Phoenix, for defendant-appellants, Blake-Berry-Blake.

## OPINION

JACOBSON, Judge.

This appeal involves the propriety of the State Land Department's leasing of state land for oil and gas exploration.

The facts are not in material dispute. In 1978 and 1979, appellee, Sanchez-O'Brien Mineral Corporation (Sanchez-O'Brien), acquired by assignment the non-competitive oil and gas lease rights to approximately 57,000 acres of state land. The leases at the time of acquisition by Sanchez-O'Brien were to expire in about three and one-half years. The annual rental under the leases was 25 cents per acre. These leases were acquired through John Karabees, an independent lease broker who was knowledgeable both as to the practices of the Land Department which administered the leases and the legislative action concerning oil and gas exploration in Arizona.

In particular, Karabees was aware of the "surrender and refile" procedure utilized by oil and gas lessees and acquiesced in by

the Land Department. The "surrender and refile" procedure was designed to avoid the non-renewability of oil and gas leases and was based upon two statutory provisions. At the time Sanchez-O'Brien acquired these leases, non-competitive oil and gas leases for non-producing wells had non-renewable five year terms. However, A.R.S. § 27–562 specifically provides that a lessee can unilaterally surrender any part of the leased premises when the lessee no longer has any use for the surrendered property. Also A.R.S. § 27–555(A) provides that the first qualified applicant making a valid application for an oil and gas lease must be issued a lease without competitive bidding.

Thus, a lessee, relying upon the surrender privileges would immediately prior to the expiration of the five year term, surrender the lease and simultaneously file application for a new lease on the same land. Since the lessees controlled the timing of the surrender, they could always be the first applicants for the available lease land. Prior to April, 1980, the Land Department routinely issued new leases to existing lessees who "surrendered and refiled." A 1956 Arizona attorney general opinion, 56 Op.Att'y.Gen. 101 (1956), opined that the procedure was permissible.

One result of the "surrender and refile" procedure was to perpetuate a lessee's control of oil and gas exploration rights. Accordingly, other prospective lessees could only explore by purchasing existing lease rights, normally at a rate higher than that charged by the state. Sanchez-O'Brien paid $6 an acre for the assignment of the lease rights in dispute here.

In 1980, the Arizona legislature made three amendments to the oil and gas leasing laws which are relevant to this litigation. First, the minimum annual per acre rental was increased from 25 cents an acre to $1.00 an acre. Second, leases could be renewed for one additional term of five years. Third, the annual rental rate for the additional term was increased to $1.50 per acre. All of these amendments became effective August 1, 1980.

In June or July, 1980, Karabees contacted Sanchez-O'Brien concerning the "surrender and refile" procedure and the impending increase in lease rates to become effective August 1, 1980. However, about this same time, the Land Department began a review and reexamination of its "surrender and refile" procedure in light of the 1980 legislative amendments. Pursuant to that review, on July 9, 1980, the State Land Commissioner issued Instruction Memo No. 20 which instructed Land Department personnel that all new leases issued in connection with the "surrender and refile" procedure would be "in accordance with House Bill 2338 enacted April 21, 1980", that is, the new rental rates would apply. The memo further advised that lessees were to be informed that for a two week period, lessees would have the option of either withdrawing their surrender and refile applications or allowing them to be processed. Mr. Karabees was informed of this change in department policy and he so informed counsel for Sanchez-O'Brien.

On July 22, 1980, a meeting was held between counsel for Sanchez-O'Brien, counsel for the Land Department, the assistant commissioner and a land department employee. At that meeting, Sanchez-O'Brien was informed that if it surrendered its leases, they would be renewed only at the new $1.00 per acre rate. Sanchez-O'Brien maintained that since the new law was not effective until August 1, 1980, the new rates could not be imposed prior to that date. On July 24, 1980, Sanchez-O'Brien surrendered its leases with a demand for immediate action. On July 31, 1980, the Land Department informed Sanchez-O'Brien that the new leases would only be issued upon payment of the $1.00 per acre rate, and extended to Sanchez-O'Brien the option of withdrawing its surrender application.

On August 9, 1980, counsel for Sanchez-O'Brien demanded that the department immediately process its surrender application and reissue new leases "in accordance with the law that existed at the time applications were made." In the meantime, appellant Blake-Berry-Blake Corporation (Blake) be-

came aware that Sanchez-O'Brien had surrendered its leases and that new leases had not been issued. Therefore, on August 5, 1980, Blake filed applications for leases on the property and tendered $1.00 per acre for the first year rental. The department then notified Sanchez-O'Brien that Blake had filed application for leases on the property and inquired whether it would pay $1.00 per acre for the leases. Sanchez-O'Brien replied that it would not. On August 29, 1980, a decision and order rejecting the Sanchez-O'Brien lease applications was entered. The department subsequently issued leases to the acreage to Blake.

On September 17, 1980, Sanchez-O'Brien filed suit in superior court for a trial de novo under the Administrative Review Act to declare the action of the Land Department void, to require the Land Department to issue leases to Sanchez-O'Brien at the 25 cent per acre rate, and to allow attorney's fees against the state pursuant to A.R.S. § 12–348. The trial court granted this relief and both Blake and the Land Department have appealed. Sanchez-O'Brien has cross-appealed from the trial court's denial of its requested relief that the term of the Sanchez-O'Brien lease begin at the time this litigation is terminated.

The State Land Department by its appeal contends:

(1) that Sanchez-O'Brien failed to exhaust administrative remedies and thus the trial court lacked jurisdiction to grant the relief requested;

(2) that the Land Department had discretion to postpone the effective date of new leases for oil and gas exploration; and

(3) that the trial court erred in awarding attorney's fees under A.R.S. § 12–348.

Blake also makes the same contentions (except the attorney's fees issue), and in addition argues:

(1) that the "surrender and refile" procedure of the Department was illegal; and

(2) that the trial court's awarding of leases to Sanchez-O'Brien at the 25 cent rate was in violation of the Enabling Act and therefore unconstitutional.

■ We turn first to the contention that Sanchez-O'Brien failed to exhaust administrative remedies, and thus the trial court should have foregone jurisdiction. The parties agree that the validity of this argument turns on whether the decision of the Land Department in rejecting Sanchez-O'Brien's application for new leases was a "contested case" within the meaning of Land Department Regulation A.C.R.R. R12–5–03(H) and A.R.S. § 41–1001(2).[1] This is so because A.C.R.R. R12–5–03(A) only requires a rehearing or review of a decision of the department in a "contested case."[2] A companion argument also urged is that Sanchez-O'Brien should have requested a hearing on the application for leases under Land Department Regulation A.C.R.R. R12–05–01(R)[3], and this failure also results in not exhausting administrative remedies. There is no question that if a hearing and review process is provided to parties before an administrative agency, failure to utilize that process precludes judicial review. *Herzberg v. David*, 27 Ariz. App. 418, 555 P.2d 677 (1976); *Campbell v. Chatwin*, 102 Ariz. 251, 428 P.2d 108 (1967). Of necessity, however, as both

---

1. Both the regulation and the statute define "contested case" as "any proceeding ... in which the legal rights ... of a party *are required by law* to be determined by an agency after an opportunity for hearing." (Emphasis added). A.R.S. § 41–1001(2)

2. A.C.R.R. R–12–5–03(A) provides in pertinent part:
   ... any party in a *contested case* before the Commissioner ... who is aggrieved by a decision rendered in such case may file with the

Commissioner, ... a written notice for rehearing or review of the decision.... (Emphasis added).

3. A.C.R.R. R12–05–01(R) provides, in part:
   When any matter is at issue before the Commissioner for decision, upon timely application by any person who may be affected by ... the decision ... may request in writing a hearing or oral argument before the Commissioner ...

A.R.S. § 41–1001(2) and A.C.R.R. R12–05–01(H) recognize, some sort of hearing procedure must be required by law (either by statute or regulation) before the principle of exhaustion of remedies is applicable. The question then simply becomes whether a hearing is required for any applicant whose application for a non-competitive oil and gas lease is being considered. Both the state and Blake argue that A.C.R.R. R12–5–01(R) (previously quoted in f.n. 3) supplies that requirement. We disagree.

The regulation by its terms contemplates a pre-decisional procedure for activating the hearing request ("when any matter *is at issue* before the Commission for decision, *upon timely application*"). The rules provide no notice to anyone that the Commission is contemplating any action on any lease application in order that a "timely" request for hearing can be given. This rule by its own terms is inapplicable to the consideration and rejection of leases.

Moreover, it is clear that when subsection (R) of Regulation 12–05–01 is read in connection with all its other subsections (36 in all) of this general regulation dealing with proceedings before the Land Department, that the regulations themselves contemplate a direct judicial review of decisions of the Commissioner. Regulation 12–5–01(GG) is entitled "Uniform appeal provisions relating to any decision of the Commissioner," and provides in part:

> In addition to those appeals from final decisions of the Commissioner to the superior court as may be otherwise now authorized by law, an appeal from any final decisions of the Commissioner ... may be taken by any person adversely affected by such decision to the superior court....

In absence of a specific rule requiring that a decision of the Commissioner rejecting an application for lease of state land be subject to a right to hearing, we refuse to read such a requirement into the present rules of the Department.

■ Since we find that the rules do not require a hearing on consideration and rejection of applications for leases, it legally follows that there is no "contested case" before the Department, requiring a review procedure. *See Cortaro Water Users' Ass'n. v. Steiner*, 148 Ariz. 343, 714 P.2d 836 (App.1985), rev'd on other grounds, 148 Ariz. 314, 714 P.2d 807 (1986).

We next turn to Blake's contention that the "surrender and refile" procedure is illegal as being contrary to legislative intent and therefore when Sanchez-O'Brien surrendered its leases, that surrender precluded it from acquiring any new rights in the same property. Sanchez-O'Brien contends that the "surrender and refile" procedure is valid, but regardless of its validity, also contends that this procedure has been recognized by the department for over 24 years and that lessees justifiably relied upon the validity of that procedure. Therefore, the argument continues, before the Department could alter that procedure, it was required to adopt a rule effectuating the change.

In order to resolve this issue, it is necessary to determine the validity of the "surrender and refile" procedure, for that validity affects the contention that a promulgated rule change is necessary to alter the procedure.

We first note that the "surrender and refile" procedure is not the subject of a promulgated rule. Rather, as previously indicated, it has come about as the result of the application of two separate statutory provisions—A.R.S. § 27–562 allowing "surrender" of unwanted leased territory and A.R.S. § 27–555(A) providing a preference to the first applicant for state leased land. Simply stated, did the legislature intend that these two statutes be utilized to provide perpetual leases to state land? We believe not.

In reviewing A.R.S. § 27–555 (prior to the 1980 amendments and which controlled the "lease of state lands not located within known geological structures") it is clear that the legislative goal is to require lessees actively to seek and produce oil and gas on state lands. Thus, former A.R.S. § 27–555(H) made it illegal to delay dis-

covery or development of oil and gas. The term of the lease was limited to five years, unless "hydrocarbon substances are procured and produced therefrom in paying quantities." A.R.S. § 27–555(D) (1976). However, if "drilling operations are being diligently prosecuted" the lease could be extended for an additional two year period. *Id.*

■ Given these specific provisions, in our opinion, the clear legislative intent would be violated by a perpetual leasing scheme that did not result in the active discovery and processing of hydrocarbon products. This, of course, is the exact effect of the "surrender and refile" procedure. A lessee utilizing this procedure need never set foot on the leased property and yet could control exploration for oil and gas on thousands of acres of state land forever. Moreover, under the statutes, the revenues to the state increase from land producing oil and gas as compared to nonproductive land (a royalty of 12% from producing wells as compared to 25 cents an acre from non-producing leases). Any Land Department procedure which would discourage the production of oil and gas and thereby decrease revenues may well run counter to the duties imposed upon the state under the Enabling Act and therefore would be invalid. We therefore hold that the "surrender and refile" procedure previously acquiesced in by the Department is invalid.

■ Sanchez-O'Brien argues, however, that since the "surrender and refile" procedure had been in existence for over 24 years, lessees were entitled to rely upon it, and the only way such a procedure could be changed was by a regularly promulgated rule enacted pursuant to A.R.S. § 41–1001 *et seq.* We disagree. Without deciding whether an illegal procedure adopted by a state agency can ever be relied upon (or conversely whether the state can ever be estopped to cancel an illegal procedure relied upon), it is clear in this case that Sanchez-O'Brien had notice prior to the time it undertook to surrender its leases of the consequences of such a surrender—the im-

position of increased rates. Under these circumstances, its actual reliance argument is not factually supportable.

■ Nor do we find any authority which would limit a state agency in discarding an illegal practice only by the promulgation of a rule under A.R.S. § 41–1001 *et seq.* Sanchez-O'Brien was given clear notice that it could not rely on the "surrender and refile" procedures previously in existence. In our opinion, this was all it was entitled to receive. From that point on, it acted at its peril in surrendering its leases. Either the "surrender and refile" procedure was valid and Sanchez-O'Brien was entitled to new leases at the old rate or it was not entitled to any leases at all.

Admittedly, the alternative submitted to Sanchez-O'Brien by the Department was not couched in these terms. Rather, the Department's offer was that if Sanchez-O'Brien surrendered its existing leases, new leases would in fact be issued, but at an increased rental. We need not determine the consequences if Sanchez-O'Brien had accepted this offer. Sanchez-O'Brien knew that if it surrendered its leases they would not be renewed on terms acceptable to it, and therefore for all practical purposes, it knew that the leases would be lost, at least insofar as the Department was concerned. Sanchez-O'Brien therefore ran the risk that the posture it adopted before the Department would result in the loss of its leases.

Since we hold that the "surrender and refile" procedure adopted by the Department was invalid and that Sanchez-O'Brien acquired no vested rights under that procedure, and since the trial court's judgment must be reversed on this basis, we need not determine the effect of the Enabling Act upon the rate charged nor the propriety of the trial court's awarding attorney's fees in favor of Sanchez-O'Brien, nor the validity of the cross-appeal.

One final matter requires disposition. Blake has filed a motion for attorney's fees in this matter. While the motion is silent as against whom it desires to collect attor-

ney's fees, we assume it is against San-chez-O'Brien as it relies upon *ASH, Inc. v. Mesa Unified School District,* 138 Ariz. 190, 673 P.2d 934 (App.1983). In *ASH,* an unsuccessful bidder for selling school busses to a school district brought an action against the school district and the successful bidder seeking a cancellation of the bid awarded, and requiring an award of the contract to itself. The court characterized this action as an attempt to invalidate the contract between the school district and the successful bidder. Under these circumstances, the court concluded that the action arose "out of a contract" under A.R.S. § 12–341.01(A)[4] and awarded attorney's fees.

Here, Sanchez-O'Brien did not seek the invalidation of the lease between the Department and Blake. Rather, it sought to overturn the Department's order rejecting its lease applications. While the effect of that action, if successful, would have required the Department to rescind its leases with Blake, this was merely the legal consequences of its action and not the direct relief requested. Under these circumstances, we are of the opinion that the tangential effect of the Sanchez-O'Brien action was too attenuated to fall within the "arising out of the contract" language of A.R.S. § 12–341.01(A). The request for attorney's fees is therefore denied.

The judgment of the trial court is reversed.

CORCORAN and EUBANK, JJ., concur.

---

4. A.R.S. § 12–341.01(A) provides in pertinent part:

    A. In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees.