825 P.2d 985

**Michael J. O'KEEFE and Theresa O'Keefe, Plaintiffs–Appellants, Cross Appellees,**

**v.**

**Gary GRENKE and Jean Grenke, husband and wife; Brian Winstanley and Lori Winstanley, husband and wife; Interpleaders–Appellees, Cross Appellants.**

**No. 1 CA–CV 89–378.**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 30, 1992.

Dioguardi, Poli & Ball, Ltd. by Michael N. Poli and Michael K. Pazdernik, Phoenix, for plaintiffs-appellants/cross appellees.

Law Offices of David W. Eagle by David W. Eagle, Phoenix, for interpleaders-appellees/cross appellants.

## OPINION

JACOBSON, Judge.

The primary issue on appeal is whether the trial court erroneously dismissed plaintiffs' amended claim against the interpleaders for a violation of the Arizona Bulk Sales Transfer Act, A.R.S. § 47–6101 *et seq.*, (bulk sales act), based on the court's conclusion that the statute of limitations imposed by the act had run. The cross-appeal raises issues whether defending against a violation of the bulk sales act is an action arising out of contract so as to allow the interpleaders attorneys' fees against plaintiffs, and whether interpleaders were entitled to setoff against the interpled funds their judgment for attorneys' fees against defendants arising from a stipulated judgment on their crossclaim. We affirm.

*Facts and Procedural Background*

In July 1982, Michael J. O'Keefe and Theresa A. O'Keefe (plaintiffs) entered into a contract (management agreement) with William E. Conry and Lyvia Conry (defendants), which provided that defendants would manage a business owned by plaintiffs known as Convenient Food Mart. The management agreement, as amended, also provided defendants with an option to purchase the business for $50,000 but provided that until defendants had paid fifty-one percent of the purchase price, plaintiffs would retain title to the store franchise, the fixtures and equipment, and all inventory. Defendants exercised this option to purchase in March 1984, but did not make payments exceeding fifty-one percent of the $50,000 price.

On February 18, 1987, defendants agreed to sell the business to Gary Grenke, Jean Grenke, Brian Winstanley, and Lori Winstanley (collectively, interpleaders) for $90,-000; $60,000 to be paid upon transfer and

the $30,000 balance to be paid in installments under a promissory note. The purchase contract transferred to interpleaders all right, title, and interest in the business including the store fixtures, inventory, interest in a lease agreement, goodwill, business customers, and personnel. Paragraph 6 of the purchase contract provided:

*Bulk Sales Act:* The Sellers state and agree that the only outstanding debts associated with the business are listed on Exhibit "D". Sellers agree that they will be responsible for all of these outstanding debts and any other debt, including tax debts the Sellers may have incurred in relation to the business.... Sellers further agree they shall comply with the Bulk Sales Act.

Exhibit "D" listed the following creditors:

1. Pepsi Cola ......................................... $ 800.00
2. Central Arizona Distributing Co. ......... 125.00
3. Salt River Project (Last month's utilities) 1,100.00

These creditors were paid from the proceeds of the sale. No notice of the transfer was sent to plaintiffs, and defendants did not pay the balance of the $50,000 option price to plaintiffs.

On March 28, 1987, an agent of plaintiffs discovered that the business had been sold to interpleaders. On May 15, 1987, plaintiffs filed suit against defendants alleging breach of the management agreement, conversion/trespass, racketeering, fraudulent concealment and nondisclosure, and sought issuance of provisional remedies (garnishment and attachment). This complaint named no other parties, although it did allege that the Grenkes and the Winstanleys were "subsequent purchasers," and attached a U.C.C. financing statement and security agreement that named the interpleaders as the transferees. The complaint requested damages in the amount of $90,-000, and sought attachment of the security interest to satisfy the judgment.

On June 23, 1987, plaintiffs amended the complaint to add a sixth count, alleging that the sale constituted a bulk transfer as defined by A.R.S. § 47–6101, that defendants violated the bulk sales act by failing to supply a list of creditors and failing to give proper notice of the transfer, and that interpleaders knew or had reason to know that defendants owed a debt to plaintiffs at the time of the transfer. The complaint requested "an order voiding the purported sale ... from the Conrys to the Grenkes and Winstanleys," "an order of attachment allowing the O'Keefes to proceed against any and all of the property transferred in violation of the Bulk Sales Transfer Act,"

and attorneys' fees and costs. The amended complaint again did not formally join the interpleaders as parties, but did add fictitious defendants "whose true identity or role in this lawsuit is unknown at present." Plaintiffs sent a copy of this complaint to the interpleaders on June 23, 1987, and again on July 24, 1987, together with letters from plaintiffs' attorney advising interpleaders that their property interest in the business may be affected by the suit, and advising them to seek legal advice.

On September 11, 1987, interpleaders filed a "Motion for Joinder and Motion for Interpleader," requesting that the court join them to the suit "for the purposes of interpleading certain funds pursuant to Rule 22," Arizona Rules of Civil Procedure. They requested permissive joinder under Rule 20(a), for the reason that "if plaintiffs are successful it will presumably affect or may affect the intervenors' ownership of the fixtures, some goods and the store itself." They further stated that "it may be that the ongoing monthly payments should in fact be paid to the plaintiffs," and requested "that the court enter its order allowing the moving parties to pay the ongoing payments into a restricted savings account and that said funds not be disbursed without a Court Order. This action would insure that the party who has a right to the money would in fact receive it."

Plaintiffs responded that they had no objection to the joinder of interpleaders, but for the first time requested that interpleaders be joined as defendants for the purposes of the bulk sales claim. Plain-

tiffs also filed a motion for leave to amend their complaint to add the interpleaders as defendants, and interpleaders responded that they had no objection to that amendment. The trial court granted all these motions.

On December 11, 1987, plaintiffs filed their second amended complaint, naming interpleaders as defendants only on the bulk sales claim, retaining the fictitious defendants, and requesting the same relief as requested in the first amended complaint.

Interpleaders filed an answer, admitting that the sale constituted a bulk transfer; asserting, among other affirmative defenses, that the statute of limitations had run; and requesting attorneys' fees and costs against plaintiff, but not stating a basis for that request. Interpleaders also filed a crossclaim against defendants, asserting that defendants were obligated under the terms of the purchase agreement to be responsible for all debts associated with the business and for compliance with the bulk sales act, and therefore interpleaders would be entitled to a setoff on the promissory note and on funds already paid to defendants pursuant to the original contract "for that amount that cross-claimants are found to be liable to the plaintiffs herein." Interpleaders also requested attorneys' fees against defendants pursuant to A.R.S. § 12–341.01.

Interpleaders then sought and received leave to file an amended answer, which added defenses to the other counts of the second amended complaint, although no relief was sought against them on those counts.

On April 4, 1988, a default judgment was entered on interpleaders' crossclaim against defendants. On April 6, 1988, a stipulated judgment was entered against defendants in interpleaders' favor, as follows:

1. Interpleaders/Cross-claimants herein shall have Judgment against the Defendants/Cross-defendants in an amount equal to that which the Cross-claimants are required to pay to Plaintiffs in chief....

2. The Judgment shall include the principal sum and interest to be paid to the Plaintiffs herein along with the actual attorneys['] fees and costs incurred by Interpleaders/Cross-claimants in defense of their claim in this action.

3. The foregoing shall accrue interest at the legal rate until paid.

Plaintiffs then filed a motion for partial summary judgment against interpleaders, requesting a ruling that the transfer violated the bulk sales act on the basis that the list of creditors did not comply with the statutory requirements and no notice of sale was sent to any creditor. The interpleaders responded, conceding that the statutory notice requirements were not met, but asserting that plaintiffs' action against interpleaders was barred by the six-month statute of limitations in A.R.S. § 47–6111, and cross-moved for summary judgment on that ground. Plaintiffs replied that the statute of limitations did not bar their action because the second amended complaint related back to a date within the statute of limitations, pursuant to Rule 15(c), Arizona Rules of Civil Procedure. Interpleaders' reply put in issue this contention.

After several hearings, additional discovery and a request by the court to brief the issue whether noncompliance with the statutory notice requirements constituted "concealment" of the transfer, which would toll the statute of limitations until plaintiffs discovered the transfer on March 28, 1987, the court held that the transfer was not "concealed" within the meaning of A.R.S. § 47–6111 for purposes of tolling the statute of limitations, that plaintiffs' second amended complaint did not relate back to a date within the statute of limitations, and that the interpleaders were therefore entitled to summary judgment on the bulk sales claim because plaintiffs' action against them was time-barred.

Subsequently, the court, in the action between plaintiffs and defendants (to which interpleaders were not a party), entered a stipulated judgment in favor of plaintiffs against defendants on the conversion count, dismissing "all other pending

counts" alleged in the second amended complaint, and awarding plaintiffs as damages the balance of interpled funds in the court-supervised savings account as well as any remaining payments owed to defendants on the interpleaders' promissory note.

Interpleaders filed a motion to set aside the stipulated judgment, claiming that they had a "priority entitlement to the funds in the restricted account" because they prevailed against plaintiffs on the bulk sales claim, and stating:

> Interpleaders now claim a right to a setoff and/or recoupment of funds in the bank account as payment for successfully defending against the Bulk Transfer claim together with the balance of payments on the $30,000.00 promissory note in connection with its successful motion for Summary Judgment on the Bulk Transfer issue.

Interpleaders also noted that they had previously obtained a judgment against defendants, had prevailed in obtaining summary judgment against plaintiffs, and had concurrently filed an application for attorneys' fees against plaintiffs. After a hearing on the motion[1] the court ruled as follows:

> Based upon the oral argument, the Court ruled that the interpled funds belong to the plaintiffs, and further ruled that neither the settlement agreement nor any judgment entered in this case affects any recoupment, setoff, or similar claim that the interpleaders may assert as a defense to payment of the promissory note.

After further briefing and additional oral argument, the court denied interpleaders' motion for attorneys' fees against plaintiffs, but granted their motion for attorneys' fees against defendants. On April 7, 1989, the trial court entered its "Judgment re: Attorneys' Fees (v. [defendants])," awarding interpleaders $20,046.75 in attorneys' fees against defendants pursuant to A.R.S. § 12–341.01, and awarding $666.90 as taxable costs. On May 5, 1989, the court entered its "Judgment (v. [plaintiffs])" in interpleaders' favor against plaintiffs, dismissing the second amended complaint against interpleaders with prejudice, awarding $2,492.40 attributable to attorneys' fees previously granted arising out of plaintiffs' withdrawal of their motion for leave to file a third amended complaint, awarding $666.90 in taxable costs, and denying attorneys' fees pursuant to A.R.S. § 12–341.01.

Plaintiffs timely appealed from the judgment in interpleaders' favor on the bulk sales claim. Interpleaders have cross-appealed from the denial of attorneys' fees against plaintiffs under A.R.S. § 12–341.01 and from the court's refusal to allow them a priority entitlement to the interpled funds to satisfy their judgment against defendants.

### Discussion

#### I. Issues on Appeal

##### A. Relation–Back of Amended Complaint

■ Plaintiffs argue that the trial court erred in holding that their second amended complaint, filed December 11, 1987, did not relate back to a date within the six-months statute of limitations.[2] Rule 15(c), Arizona Rules of Civil Procedure, provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates

---

**1.** Interpleaders have not provided this court with a transcript of this hearing as part of the record on cross-appeal.

**2.** Plaintiffs' original complaint, filed within six months of the transfer, contained no bulk sales claim and did not name interpleaders as defendants. Plaintiffs' first amended complaint, also filed within six months of the transfer, added the bulk sales claim, added fictitious defendants, but again did not name interpleaders as parties. Plaintiffs made no argument in the trial court that their second amended complaint, filed on December 11, 1987, more than six months after the transfer, was an attempt to "substitute" the interpleaders for the fictitious defendants, nor does the second amended complaint so indicate. *See generally Pima County v. Superior Court,* 113 Ariz. 221, 550 P.2d 92 (1976) (distinguishing between substitution of parties and addition of parties). We therefore do not address this argument, made for the first time on appeal.

back to the original date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party, (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identities of the proper party, the action would have been brought against the party.

*See also Watts v. State,* 115 Ariz. 545, 566 P.2d 693 (App.1977).

The parties do not seriously dispute that the first two requirements of the rule have been met: (1) the bulk sales claim arose from the same transaction as the sale of the business claims set forth in the original complaint, (2) interpleaders received written notice of the institution of that action shortly after it was filed. The only issue remaining is whether the amendment naming the interpleaders as defendants on the bulk sales claim was a result of a "mistake" concerning their identities. In the trial court, plaintiffs contended that the omission of the interpleaders as parties in the first amended complaint, filed within the statutory period,

> was as a result of the inadvertence and mistake of [plaintiffs'] counsel in interpreting the reach of the bulk sales provisions of the U.C.C. Specifically, [plaintiffs'] counsel incorrectly determined that the Interpleaders did not have to be named in order for a lien to be placed upon the property transferred in the subject sale.

Plaintiffs attached an affidavit from counsel, which stated as follows:

> . . . .
>
> 3. Prior to September, 1987, ... co-counsel in this action instructed me to research the specific issue of whether [interpleaders] had to be named to this action, in order for [a] lien to be placed upon the property transferred in the

transaction which is the subject of this matter.

> 4. After researching this issue, I erroneously concluded that the Interpleaders did not have to be named. The statute of limitations thereafter ran against the Interpleaders.
>
> 5. After the statute of limitations had run, I determined that my previous conclusion was in error and immediately moved to add the Interpleaders to this action.
>
> 6. The Interpleaders did not object to being added to this action and the Plaintiffs' Second Amended Complaint was filed on December 11, 1987.
>
> 7. If [co-counsel] had received proper counsel from myself on this issue, the Interpleaders would have been named in the original Complaint, as well as the First Amended Complaint.

Plaintiffs thus admit that the "mistake" in not naming interpleaders as defendants on the bulk sales claim in their first amended complaint was a result of an erroneous conclusion of law by their counsel. Further, it is clear that by naming interpleaders as the subsequent purchasers in both the original complaint and the first amended complaint that plaintiffs knew of the existence and identities of these parties from the time they commenced this action. The issue is thus directly presented as to whether the failure to name interpleaders as the result of a "mistake as to the necessity for naming them," meets the requirements of Rule 15(c).

In our opinion, a "mistake concerning the identities of the proper party" does not include a mistake of law by counsel regarding whom to name in a lawsuit. If such a broad reading of Rule 15(c) were adopted, it would unreasonably extend the statute of limitations in a limitless number of cases in which legal counsel made strategic, conscious, tactical choices, although erroneous, about whom to sue initially, and then changed their minds after the statute of limitations had run.

■ The proper interpretation of the rule is that widely adopted in other federal and state courts: Where a plaintiff knows

of the existence and identity of a defendant before the statute of limitations runs, and makes a conscious election about whom to sue, that plaintiff's deliberate, though ultimately erroneous or unwise, tactical choice cannot be considered a "mistake" in identity of a party that would allow relation-back of an amended pleading to defeat a statute of limitations defense. *See, e.g., Kuhlman v. Keith,* 409 So.2d 804 (Ala.1982) (statute of limitations does not toll where plaintiff knew of identity and existence of persons sought to be brought into action for two years before amendment); *Chambers v. General Elec. Co.,* 70 Ill.App.2d 296, 217 N.E.2d 549 (1966) (cannot add party by amendment after statute of limitations had run where its existence and legal status remained unchanged and was known to plaintiff at time original suit was filed); *Garvey v. Clark,* 91 Nev. 127, 532 P.2d 269 (1975) (no relation-back "mistake" where plaintiffs conceded they "consciously elected" not to name state as party when suit was commenced); *Harris v. E.F. Hauserman Co.,* 575 F.Supp. 749 (N.D.Ohio 1983) (plaintiff cannot "change his mind" about whom to sue after statute of limitations has run); *Archuleta v. Duffy's, Inc.,* 471 F.2d 33 (10th Cir.1973) (a strategic choice of defendant does not qualify as a Rule 15(c) "mistake" where defendant was not misdirected, but was deliberately, though mistakenly, not sued); *see generally,* Annotation, 8 A.L.R.2d 6, *Change in Party After Statute of Limitations Has Run* (1949, 1985 & Supp. May 1991).

■ Furthermore, under Rule 15(c), plaintiffs are required to establish that the interpleaders "knew or should have known" that, but for that "mistake," they would have been sued. Notice of the suit does not necessarily establish that knowledge. *See, e.g., Bisaillon v. Casares,* 165 Ariz. 359, 798 P.2d 1368 (App.1990) (even if party is aware of action, plaintiff's decision not to sue could be seen as intentional rather than mistake); *Gridley v. Cunningham,* 550 F.2d 551 (8th Cir.1977) (the added defendant, even if served with notice of the original complaint, would not necessarily know that plaintiff made a "mistake" in not naming him); *Curry v. Johns-Man-*

*ville Corp.,* 93 F.R.D. 623 (D.Pa.1982) (third party could have reasonably inferred that plaintiff made a deliberate tactical choice not to take action to assert direct claims against them); *King & King Enterprises v. Champlin,* 446 F.Supp. 906 (E.D.Okla.1978) (reasonable for unnamed parties to assume that plaintiffs made a strategic choice of defendant that did not include them). Here, plaintiffs have shown no evidence of interpleaders' knowledge of their mistake of law, and interpleaders have correctly noted that notice of the suit, alone, did not require them "to speculate as to the obvious decision of [plaintiffs] not to sue them." *See Holden v. R.J. Reynolds, Ind.,* 82 F.R.D. 157 (D.N.C.1979) ("when the plaintiff merely sues one joint tortfeasor or obligor, the missing party is under no duty to speculate as to the reason plaintiff has not pursued him").

Because plaintiffs failed to meet the "mistake of identity" requirement of Rule 15(c), the trial court correctly refused to allow plaintiffs' second amended complaint to relate back to defeat the interpleaders' statute of limitations defense.

### B. *Waiver of Defense by Joinder/Interpleader*

■ Plaintiffs alternatively argue that, even if their second amended complaint does not relate back to a date within the six-month statute of limitations, interpleaders are estopped from asserting the statute of limitations defense because it was waived by voluntarily moving to join the suit before the statute of limitations had run. We disagree.

■ Because an answer can be amended at any time prior to trial with permission of the court, a statute of limitations defense is waived only if not asserted prior to judgment. *Transamerica Ins. Co. v. Trout,* 145 Ariz. 355, 358, 701 P.2d 851, 854 (App. 1985). A party does not waive the defense by filing a notice of appearance in the suit within the statute of limitations. *Matthies v. Knodel,* 19 Wash.App. 1, 573 P.2d 1332, 1335 (1977). The civil rules provide for waiver of an affirmative defense only if not

raised in the first responsive pleading. *See* Rule 12(h), Arizona Rules of Civil Procedure.

In this case, interpleaders' motion to join for the purpose of interpleading the funds at issue in the lawsuit was not a responsive pleading that required them to assert any defenses to a claim that at this point in the proceedings had not been brought against them. We find no "waiver" of the statute of limitations defense.

### C. *Noncompliance as "Concealment" Under the Bulk Sales Act*

■ The parties' primary dispute in the trial court and on appeal is the date on which the applicable six-month statute of limitations for the bulk sales claim began to run. The relevant statute provides:

> No action under this chapter shall be brought or levy made more than six months after the date on which the transferee took possession of the goods unless the transfer has been concealed. *If the transfer has been concealed,* actions may be brought or levies made within six months after its discovery.

A.R.S. § 47–6111 (emphasis added).

The dispositive dates are undisputed: the transferee took possession on February 18, 1987; plaintiffs' discovery of the transfer occurred on March 28, 1987; plaintiffs' complaint naming interpleaders on the bulk sales claim was filed on December 11, 1987. Plaintiffs argue that because the transfer was "concealed" by failure to comply with the requirements of the bulk sales act, the statute of limitations did not begin to run until they discovered the transfer on March 28, 1987. Therefore, their amended complaint was not barred by the statute of limitations.[3] On the other hand, interpleaders contend that mere noncompliance with the notice provisions of the bulk sales act, alone, does not constitute the "concealment" necessary to extend the statute of limitations to six months from plaintiffs'

discovery of the transfer. Rather, they argue that some affirmative act or intentional deception of the transfer is required to keep the fact of the sale from plaintiffs, of which there is no evidence in this case.

First, we agree that there is no evidence in this record that either the transferor or the transferee in this bulk sale performed any "positive acts . . . to prevent detection" by "trick or contrivance to exclude suspicion and prevent inquiry," under the traditional definition of "concealment" in other contexts outside the bulk sales act. *See Tovrea Land & Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 130, 412 P.2d 47, 64 (1966). Indeed, the only evidence is to the contrary. For example, interpleaders removed the sign in the front of the store that had read "Conry's Food Mart" and placed a 4' × 5' banner in front of the store that read "Under New Ownership and Management." They also obtained a sales tax license, liquor license, and lottery permit in the name of Gary Grenke and conspicuously posted those documents in the store. In addition, at least one of the interpleaders was physically present and involved in the operation of the store between 65 and 70 hours a week after February 18, 1987. Furthermore, the parties stipulated that interpleaders were not even aware, at the time of transfer, of any potential interest of plaintiffs. Although the trial court did note that defendants may have "actively concealed" the existence of any alleged debt from the interpleaders prior to the transfer, no evidence was presented that defendants performed any act or omission after the transfer to actively prevent plaintiffs from finding out about it.

We therefore must decide whether the "concealment" necessary under A.R.S. § 47–6111 to extend the running of the statute of limitations requires something more than mere noncompliance with the notice provisions of the bulk sales act. This issue is one of first impression in

---

**3.** Inherent in plaintiffs' position is the argument that their motion for leave to file an amended complaint tolled the statute of limitations, because plaintiffs did not receive a ruling on that motion until after the statute had run under

either party's theory. Because we conclude that the statute of limitations ran six months from the date the transferee took possession, we do not reach this issue.

Arizona, although it has been addressed, with contradictory results, in other jurisdictions that have interpreted identical provisions of their bulk sales acts.

To determine this question, a review of the notice provisions of the bulk sales act is in order. A bulk transfer is ineffective against any creditor of the transferor unless the transferee gives proper notice of the transfer to that creditor at least ten days prior to payment or possession. A.R.S. § 47-6105. The notice must state that the transfer is about to be made, the names and business addresses of the transferor and transferee, and whether the debts are to be paid in full upon transfer. A.R.S. § 47-6107. The notice must be personally delivered or sent by registered or certified mail to the creditors on the list. A.R.S. § 47-6104. The parties do not dispute that this was a bulk transfer to which this requirement applied, and that proper notice was not given to plaintiffs.[4] Additionally, the parties concede that the other creditors named on Exhibit D to the purchase contract were paid in full at the time of transfer.[5]

Some jurisdictions have held that total noncompliance with the notice provisions of the bulk sales act constitutes the "concealment" necessary to toll the running of the statute of limitations to the date that a creditor discovers the transfer, without requiring any showing of any other acts by the transferor or transferee to hide the transfer. See, e.g., Carpenter, Bennett & Morrissey v. Jones, 197 N.J.Super. 475, 485 A.2d 316 (1984) (dictum); Columbian Rope Co. v. Rinek Cordage Co., 314 Pa.Super. 585, 461 A.2d 312 (1983); E.J. Trum, Inc. v. Blanchard Parfums, Inc., 33 A.D.2d 689, 306 N.Y.S.2d 316 (1969). A reason given for this result is that treating noncompliance differently from active concealment would undermine the legislature's purpose to promote advance notice of a bulk transfer, and would encourage transferees to take the "small risk of creditor action within six months after the completely undisclosed transfer." Columbian Rope Co., 461 A.2d at 315; see also J. White and R. Summers, Uniform Commercial Code § 19-3 at 768 (2d ed. 1980) ("It is notorious that lawyers sometimes advise their clients not to go through the formalities of complying with Article Six. Compliance may be time-consuming and expensive. It may also stir up creditors— even questionable ones—who may try to hold up the sale."). Another reason given for this approach is the difficulty creditors may face in proving affirmative concealment when they have received no notice of the transfer. SVM Investments, 685 S.W.2d at 429.

Other jurisdictions hold that something more than mere notice noncompliance is necessary to constitute concealment of a bulk sale. See e.g., Matter of Borba, 736 F.2d 1317 (9th Cir.1984); In re Northern Specialty Sales, Inc., 57 B.R. 557 (Bkrtcy. D.Ore.1986); Aluminum Shapes, Inc. v. K-A-Liquidating Co., 290 F.Supp. 356 (W.D.Pa.1968); SVM Investments v. Mexican Exporters, Inc., 685 S.W.2d 424, 429 (Tex.App.1985); Pipeline Materials v. Turf Irrigation Corp., 754 P.2d 775 (Colo.App. 1988). A common theme in these cases is that equating "concealment" with "notice noncompliance" would effectively cancel that portion of the statute that requires that an action be brought within six months from date of transfer, in contravention of the public policy to promote prompt action by defrauded creditors. See Borba, 736 F.2d at 1320. Another reason given against a broad interpretation of "concealment" is that if the legislature had wanted to include notice noncompliance in the concealment category, it could easily have

---

**4.** The parties did initially dispute whether plaintiffs were a "creditor" in this case, but that issue is not before us on appeal.

**5.** We do not decide, as the trial court did, that this payment constituted either partial compliance with the notice provisions or informal notice of the sale that would negate a finding of concealment based on "total" or "complete"

noncompliance in some jurisdictions. See, e.g., SVM Investments v. Mexican Exporters, Inc., 685 S.W.2d 424, 429 (Tex.App.1985); see also 2 J. Summers and R. White, Uniform Commercial Code § 20-4 at 112 (3d ed. 1988) (any "defect" from notice noncompliance can be "cured" by paying the creditor who did not receive notice).

done so. *Pipeline Materials*, 754 P.2d at 776.

We believe the better-reasoned view is taken by courts that hold that the "concealment" required to extend the running of the statute of limitations to the date the creditor discovers the transfer requires more than mere noncompliance with the notice provisions of the bulk sales act. The bulk sales act clearly provides three different time periods in which a creditor may bring suit, depending on the circumstances. First, if the creditor has received proper notice, it has ten days prior to the transfer to protect its interest. A.R.S. § 47–6105. Second, if the creditor does not receive notice, it has six months from the date of the transferee's possession to take action. A.R.S. § 47–6111. Third, if the transfer has been concealed, the creditor has six months from discovery of the transfer to take action. *Id.* We agree with those cases that note that if we were to interpret "concealment" as including failure to give notice, we would render meaningless the language in A.R.S. § 47–6111 referring to the six months from the date of the transferee's possession. We would also distort the ordinary definition of "conceal" from meaning "to prevent disclosure or recognition of; to place out of sight" to mean something more, without any legislative intent of such a broad interpretation. *See Webster's New Collegiate Dictionary* (1981).

The position we adopt has been supported by prominent commentators as well:

> Under this concealment exception, we believe that only a buyer who knowingly and willingly withholds notice of the transfer, i.e., acts in bad faith, should be denied the benefit of a short statute of limitations. In our view, so long as buyers act in good faith, they should be entitled to the benefit of a short statute of limitations, even though they completely fail to give notice under Article Six.

J. White and R. Summers, 2 *Uniform Commercial Code* § 20–4 at 117 (3d ed. 1988). We agree with the reasons given for this position. First, bad faith can be proven by evidence that the buyer knowingly and willingly withheld notice. Second, contrary to those courts that have adopted the "complete failure rule" on the basis that the legislative intent was to protect creditors against fraudulent transfers, in our opinion, there exist two competing goals of the bulk sales act: to protect creditors from fraudulent transfers and to protect innocent transferees from stale creditor claims. *Id.* at 117–18. Those combined purposes are best served, in our opinion, by this interpretation. It is important not only that creditors be protected but also that transferees enjoy the right to continue the operation of the purchased business after a reasonable period of time without fear of creditor claims. Third, extending the limitations period against a transferee without a showing of bad faith "does not lessen the chance of fraud by the transferor. It does not provide the creditor with notice, it simply punishes the unwary transferee." *Id.* at 118. Finally, the drafters' intent was to minimize "the possibility of a trap for the unwary buyer"; however, applying the "complete failure" rule to good faith transferees "would widen the trap without lessening the danger of fraud," which contradicts that intent. *Id.*

Apparently the drafters of the uniform law also agree with this position. The current version of the limitations period for bulk sales claims, set forth in 2A *Uniform Laws Annotated* § 6–110 (Supp.1991), specifically states: "Complete noncompliance with the requirements of this article does not of itself constitute concealment." We believe our interpretation of "concealment" in A.R.S. § 47–6111 is a tacit recognition of this standard.

We hold, therefore, that the interpleaders' failure to comply with the notice requirements of A.R.S. § 47–6111, without further evidence of any act or omission calculated to hide the transfer from these plaintiffs, did not constitute "concealment" within the meaning of A.R.S. § 47–6111 that would extend the statute of limitations to six months after plaintiffs discovered the transfer. The trial court thus correctly concluded that plaintiffs' amended claim for interpleaders' violation of the bulk sales

act, filed more than six months after the transferee took possession, was barred by A.R.S. § 47–6111. The judgment dismissing the bulk sales claim against interpleaders is affirmed.

## II. *Issues on Cross–Appeal*

### A. *Interpleaders' Priority Rights to Interpled Funds*

On cross-appeal, interpleaders argue, as they did in the trial court, that they had a priority right to setoff against the interpled funds the judgment they were awarded against defendants "on their breach of warranty claim." We find that interpleaders neither asserted a "breach of warranty" claim against defendants nor presented any other claim that would entitle them to a right of setoff against the interpled funds.

Interpleaders included in their amended answer an affirmative defense of setoff to the bulk sales claim, as follows:

> In the event it is determined that there is a debt owed to Plaintiffs by Defendants and said amount represents a lien on the property acquired by Interpleaders, the Interpleaders are entitled to setoff of that amount to the extent the Interpleaders paid debts owed by Plaintiffs to third parties. . . .

No lien on the property occurred as a result of any of the four judgments entered in this case, so this request does not entitle interpleaders to any right of setoff on that basis.

In addition, in their crossclaim, interpleaders requested the following relief against defendants:

> 1. That in the event [Interpleaders are] found to be liable to Plaintiffs, or in the event [Interpleaders are] assessed a lien on the personal property acquired pursuant to the Purchase Contract, then [Interpleaders] be awarded a Judgment against [Defendants] in the amount of said lien.
>
> 2. That in the event [Interpleaders are] required to make payment to Plaintiffs herein [Interpleaders] have a setoff of any amounts owed to Plaintiffs from the

funds placed in the Court Ordered bank account and pursuant to the Promissory Note described herein.

> 3. For reasonable attorneys' fees.

As to the first request, interpleaders were not found to be liable to plaintiffs, as the amended bulk sales claim was dismissed as untimely, and they were not named defendants on any of the other counts in the complaint. As we have already noted, no lien was placed on the business. As to the second request, no setoff was necessary as affirmative relief because no judgment was entered against interpleaders in plaintiffs' favor. As to the third request, interpleaders were awarded attorneys' fees against defendants, but did not claim any right to setoff that award against any interpled funds. Interpleaders had no right to setoff the judgment for attorneys' fees owed by defendants to them from the funds found by the court to be owed by defendants to plaintiffs.

Interpleaders also argue that they have a priority entitlement to the interpled funds "since [interpleaders] prevailed by summary judgment on the Plaintiff's sixth claim for relief in the second amended complaint," (the bulk sales claim). However, interpleaders did not receive any money judgment on this claim, nor did they assert any affirmative claim against plaintiffs on that action. Interpleaders also argued that they had "prevailed" on the other counts against defendants, but they were not named parties on those counts, which were dismissed as a result of a stipulation between plaintiffs and defendants on the conversion count. We simply find no basis in this record for interpleaders' entitlement to setoff of any portion of the interpled funds on any theory against plaintiffs.

As the trial court correctly noted, the judgments in this case did not bar any future "recoupment, setoff, or similar claim that the interpleaders may assert as a defense to payment of the promissory note." The interpleaders' right to setoff against plaintiffs is clearly not raised in this lawsuit. We do not determine if such a claim of setoff may arise if interpleaders fail to make payments on the promissory

note to plaintiffs in the future resulting in action on that note. We thus find no error in the trial court's failure to award interpleaders a priority entitlement to the interpled funds awarded to plaintiffs.

### B. *Attorneys' Fees Pursuant to A.R.S. § 12–341.01(A)*

■ Interpleaders also cross-appeal from the trial court's denial of their request for attorneys' fees against plaintiffs, based on their successful defense of the bulk sales claim, contending that such a claim is embraced within A.R.S. § 12–341.01(A), which provides:

> In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees.

The trial court denied interpleaders any attorneys' fees against plaintiffs on the basis of A.R.S. § 12–341.01, finding that the bulk sales claim, on which interpleaders prevailed, arose out of a statutory claim, not contract.[6] We agree.

Interpleaders argue that A.R.S. § 12–341.01(A) is applicable because, "but for" the management agreement and purchase contract involved in this case, no bulk sales claim would have arisen. Although conceding that they "prevailed upon an issue which did not itself concern a contract," they argue that when a contract is "a factor" causing the dispute, the statute applies. *See Nationwide Mut. Ins. Co. v. Granillo*, 117 Ariz. 389, 394, 573 P.2d 80, 85 (App.1977); *Ash, Inc. v. Mesa Unified Sch. Dist.*, 138 Ariz. 190, 673 P.2d 934 (App.1983). They further contend that an intervenor can be entitled to attorneys' fees

under A.R.S. § 12–341.01(A) when the "requisite causal link" is found between the intervenor's claims and defenses and the underlying contract between plaintiff and defendant. *McKesson Chem. Co. v. Van Waters & Rogers*, 153 Ariz. 557, 739 P.2d 211 (App.1987). These cases are distinguishable.

In *Granillo*, Division Two of this court found A.R.S. § 12–341.01 applicable to successful defendants in a declaratory judgment action determining whether an insurance policy provided coverage. Although defendants were not a "party" to the contract, they prevailed on an issue involving "facts and law regarding the insurance contract," and thus were entitled to attorneys' fees. *Granillo*, 117 Ariz. at 395, 573 P.2d at 86. Conversely, the bulk sales claim on which interpleaders prevailed in this case did not involve any contractual interpretation issue.

In *Ash*, the prevailing party sought by special action to invalidate a contract. This court found A.R.S. § 12–341.01 applied because "the words 'arising out of a contract' describe an action in which a contract was a factor causing the dispute." *Ash*, 138 Ariz. at 192, 673 P.2d at 936. We found that because the prevailing defendants had "incurred substantial expense in defending the propriety of their contract," the trial court had properly awarded them attorneys' fees. *Id.* at 193, 673 P.2d at 937. Here, however, interpleaders' defense of the bulk sales claim against them did not involve any attempt to defend either the management agreement or the purchase contract.[7]

6. The trial court granted interpleaders' request for attorneys' fees against defendants pursuant to A.R.S. § 12–341.01(A), based on the contractual relationship between those parties. The trial court also awarded interpleaders attorneys' fees against plaintiffs for those fees incurred in defense of plaintiffs' motion for leave to file a third amended complaint, which was subsequently withdrawn. Those awards are not at issue in this appeal.

7. Interpleaders point out that, in their amended answer, they defended defendants against the other five counts of the complaint. At oral argument in this court, interpleaders argued that, in reality, they had to defend those claims

"in defendants' shoes." However, interpleaders were not named parties on the other five counts, and cannot now claim they were a prevailing party on contractual claims where no relief was sought against them.

Interpleaders also contend that they successfully obtained judgment against defendants based on a "breach of warranty" claim arising out of the purchase contract. As we have previously pointed out, the pleadings do not support this contention; interpleaders' crossclaim against defendants sought nothing more than indemnity against defendants if plaintiffs prevailed against interpleaders, and attorneys' fees against defendant, which they were awarded.

*McKesson* involved an award of attorneys' fees to an intervening defendant in a products liability suit based on breach of warranty, who cross-claimed seeking indemnity from defendant. This court found the issues between the defendant and the intervenor "arose out of a contract" because the intervenor "would not have been involved in the case had it not been for the contract underlying the sale" of the product between plaintiff and defendant. *McKesson*, 153 Ariz. at 563, 739 P.2d at 217. In that case, however, the intervenor prevailed on a ruling that was in effect a declaratory judgment that it owed no indemnity to defendant under the contract. *Id.* at 562, 739 P.2d at 216. The "requisite causal links" between the defense and the underlying contract were therefore present. *Id.* at 563, 739 P.2d at 217. In this case, interpleaders prevailed on a pure statutory claim for their failure to comply with the bulk sales act, A.R.S. § 47–6111, and that defense involved no "causal link" to the contract between plaintiff and defendant. Plaintiffs could have brought their statutory bulk sales claim against interpleaders under A.R.S. § 47–6111 regardless whether they alleged a breach of contract claim against defendants.

We also note that this case is unlike *Marcus v. Fox*, 150 Ariz. 333, 723 P.2d 682 (1986), also cited by interpleaders. In *Marcus*, the supreme court held that when two parties to a contract were involved in litigation over fraudulent inducement to enter the contract, A.R.S. § 12–341.01 could be applied to award fees to the prevailing party. *Id.* at 336, 723 P.2d at 685. Although the claim sounded in tort, the court found the requisite causal link between the claim and the underlying contract because the relief sought was invalidation of the contract, and the tort could not have existed but for the fraudulently induced contract. *Id.* at 336–37, 723 P.2d at 685–86. In other words, the existence of the contract was a necessary element of the tort claim. *See also Barmat v. John and Jane Doe Partners*, 155 Ariz. 519, 747 P.2d 1218 (1987) (tort arising from breach of a contractual duty arises out of contract); *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529,

647 P.2d 1127 (1982) (A.R.S. § 12–341.01(A) applies if tort action could not exist but for the breach of the contract). Here, in contrast, no evidence of any contract was necessary for plaintiffs to assert, or interpleaders to defend, a statutory violation of the bulk sales act. Furthermore, as the *Marcus* court stated, "attorneys' fees are not appropriate based on the mere existence of a contract somewhere in the litigation." *Id.* 150 Ariz. at 335, 723 P.2d at 684.

We find the cases cited by plaintiffs more analogous to this one. *See Morris v. Achen Constr. Co., Inc.*, 155 Ariz. 512, 747 P.2d 1211 (1987); *Cauble v. Osselaer*, 150 Ariz. 256, 722 P.2d 983 (App.1986); *Lewin v. Miller Wagner & Co., Ltd.*, 151 Ariz. 29, 725 P.2d 736 (App.1986); *Sanchez–O'Brien Minerals Corp. v. State*, 149 Ariz. 258, 717 P.2d 937 (App.1986). *Morris* found no contractual basis for an award of fees in a case where the claim arose out of a duty not to commit fraud that was not created by any contractual relationship between the parties. 155 Ariz. at 514, 747 P.2d at 1213. In *Cauble*, we found that when "the immediate genesis" of the claim was not the peripheral deed of trust but was the court-imposed requirement that the receiver's compensation be "reasonable," the claim arose not from a contractual duty but from an independent duty created by the trial court's order. Likewise, the bulk sales claim in this case arose from an alleged breach of interpleaders' statutory duty to notify plaintiffs of the transfer, and not from any contractual obligation. *Lewin* also supports this result in its clarification of the *Ash* test of whether a contract was "a factor" causing the dispute:

> [T]he contract in *ASH* was not merely "a factor", but *the* factor giving rise to the litigation. We therefore do not construe the "factor test" adopted in *ASH* to mean that simply because a contract is peripherally involved in a cause of action, A.R.S. § 12–341.01(A) is always applicable.

*Lewin*, 151 Ariz. at 37, 725 P.2d at 744. Similarly, in this case, the peripheral involvement of a contract does not require the application of A.R.S. § 12–341.01(A),

where the cause of action between interpleaders and plaintiffs arose out of a statutory, not contractual, obligation. As in *Sanchez–O'Brien,* the existence of a contract in the case was "too attenuated" to bring the bulk sales claim within the "arising out of a contract" language of A.R.S. § 12–341.01. *See Sanchez–O'Brien,* 149 Ariz. at 264, 717 P.2d at 943.

We hold that the trial court properly found A.R.S. § 12–341.01 inapplicable to interpleaders' request for attorneys' fees against plaintiffs based on interpleaders' successful defense of the bulk sales claim.

Interpleaders have requested attorneys' fees for this appeal, presumably under the same theories they were denied in the trial court. For the same reasons that we affirm that denial, we deny their request.

For the foregoing reasons, we affirm the judgment of the trial court.

CLABORNE and LANKFORD, JJ., concur.